IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANTONIO JONES,

                    Plaintiff,          Civil Action No.
          v.                            9:13-CV-1004 (GTS/DEP)

JOSEPH T. SMITH, *et al.*,

                    Defendants.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

ANTONIO JONES, *Pro Se*
96-B-1330
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN              JAMES B. McGOWAN, ESQ.
New York State Attorney General        Assistant Attorney General
The Capitol
Albany, NY 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Antonio Jones commenced this action in August 2013 against the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") and several other DOCCS employees pursuant to 42 U.S.C. § 1983 alleging that the defendants deprived him of his civil rights. In the claims that remain before the court, plaintiff alleges that he was denied procedural due process during the course of two separate disciplinary hearings, both of which resulted in determinations of guilt that were later vacated and expunged from his disciplinary record.

The remaining defendants in the action have responded to plaintiff's amended complaint by requesting its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In their motion, defendants contend that a state court's determination that plaintiff's constitutional rights were not violated during the course of the first disciplinary hearing is entitled to preclusive effect and that, because the second disciplinary hearing did not result in the deprivation of a protected liberty interest, any claims associated with that disciplinary hearing are subject to dismissal. For the reasons set forth below, I recommend that defendants' motion be granted.

I.    BACKGROUND[1]

Plaintiff is a prison inmate currently in the custody of the DOCCS. *See generally* Dkt. No. 20. Although he is now confined elsewhere, at the times relevant to his claims in this case plaintiff was confined in the Shawangunk Correctional Facility ("Shawangunk"), located in Walkill, New York. *Id.* at 3; Dkt. No. 44.

According to the allegations set forth in the amended complaint, on May 27, 2011, a DOCCS corrections officer searched plaintiff's cell and discovered and confiscated four photographs that he suspected to be gang-related materials. Dkt. No. 20 at 3. Following the search, the officer issued plaintiff a misbehavior report accusing him of possessing gang material. *Id.* In June 2011, a disciplinary hearing was conducted by defendant Gardner, a DOCCS corrections lieutenant, to address the

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). The court has also considered plaintiff's response to defendants' motion to the extent the materials submitted are consistent with the allegations contained in the amended complaint. *See, e.g., Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.) ("[I]n cases where *a pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint.") (collecting cases) (quotation marks omitted), *vacated on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

charges lodged in the misbehavior report. *Id.* At the hearing, plaintiff was found guilty and sentenced to fourteen months of disciplinary special housing unit ("SHU") confinement, with an additional loss of privileges and a recommendation that he forfeit good time credits. *Id.* Defendant Gardner's determination was upheld on appeal to both defendant Joseph T. Smith, the Superintendent at Shawangunk, and to defendant Albert Prack, the DOCCS Director of Special Housing and Inmate Discipline Program. *Id.*

Plaintiff thereafter commenced a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") in New York State Supreme Court, Albany County, challenging defendant Gardner's finding of guilt and resulting sanction. Dkt. No. 20 at 3. In the Article 78 proceeding, plaintiff argued, *inter alia*, that the determination should be set aside based on defendant Gardner's denial of his requests to call a particular witness and for the production of evidentiary materials. Dkt. No. 38-10 at 2, 4. The presiding Supreme Court justice granted plaintiff's petition, vacated defendant Gardner's hearing determination, and remitted the matter to the DOCCS for a new hearing. *Id.* at 6. Plaintiff filed a notice of appeal from that decision with the New York State Supreme Court, Appellate Division, Third Department based on the Article 78 court's

4

finding that the hearing officer's exclusion of a witness did not violate his constitutional rights. Dkt. No. 28-1 at 3. According to defendants' counsel, plaintiff failed to perfect that appeal. *Id.*; *see also* Dkt. No. 38-2 at 6-7 (plaintiff acknowledging that he never filed an appeal with the Third Department because "he obtained a favorable determination regarding his due process claims").

Upon remittal, defendant James Esgrow conducted a second disciplinary hearing in August 2012 regarding the misbehavior report accusing plaintiff of possessing gang related materials. Dkt. No. 20 at 3-4. At the conclusion of the hearing, plaintiff was again found guilty and sentenced to six months of SHU confinement. *Id.* at 4. Because plaintiff had already served at least six months in SHU confinement following the first disciplinary hearing, the sanction following the second hearing was tantamount to a sentence of time served. *Id.* Defendant Esgrow's determination was affirmed on appeal by defendants Smith and Prack. *Id.*

Plaintiff thereafter commenced a second Article 78 proceeding in Albany County Supreme Court challenging the second disciplinary hearing determination. Dkt. No. 20 at 4. The grounds set forth in plaintiff's second Article 78 petition are not clear based on the record now before the court. *See id.* (complaining that defendant Esgrow denied his requests to call

certain witnesses at the second disciplinary hearing and withheld documentary evidence but independently stating defendant Prack's affirmance of the hearing determination "warrant[ed] [plaintiff] to file an Article 78 with the Supreme Court in Albany County"). While the second Article 78 proceeding was pending, defendant Prack voluntarily reversed the second disciplinary hearing determination and expunged it from plaintiff's disciplinary record. *Id.* On stipulation of the parties, the second Article 78 proceeding was dismissed before the court issued a decision. *See* Dkt. No. 41 at 4-5.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about August 19, 2013, with the filing of a complaint and accompanying application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Following an initial review of the complaint and IFP application pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, District Judge Glenn T. Suddaby issued a decision and order dated January 27, 2014, granting plaintiff's IFP application and dismissing all of the claims asserted in the complaint with the exception of plaintiff's Fourteenth Amendment due process claims asserted against defendants Gardner, Smith, Prack, and Esgrow arising out of the two disciplinary hearings in June 2011 and August 2012. Dkt. No. 13 at 17-18.

Following the issuance of that initial order, plaintiff filed an amended complaint on March 7, 2014. Dkt. No. 20. Upon review of that pleading, the court again dismissed all of the causes of action asserted with the exception of the due process claims asserted against defendants Gardner, Smith, Prack, and Esgrow. Dkt. No. 26.

On July 22, 2014, in response to the amended complaint, defendants filed a motion to dismiss plaintiff's remaining claims. Dkt. No. 28. In their motion, defendants contend that the state court's Article 78 determination, which explicitly found that plaintiff's constitutional rights were not violated when defendant Gardner denied plaintiff's request to call a certain witness at the first disciplinary hearing, should be afforded preclusive effect and bar any due process claims arising from the first disciplinary hearing. Dkt. No. 28-2 at 3-6. With respect to the second disciplinary hearing, defendants argue plaintiff was not deprived a constitutionally significant liberty interest because he had already served the sentence imposed by defendant Esgrow. With the submission of plaintiff's opposition papers on October 6, 2014, Dkt. No. 38, a reply letter from defendants' counsel, Dkt. No. 39, and a surreply from the plaintiff on October 29, 2014, Dkt. No. 40, defendants' motion is now fully briefed and

ripe for determination.[2] Defendants' motion has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.    Dismissal Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading applying a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its

---

[2]    Notwithstanding the court's local rule prohibiting surreplies and plaintiff's failure to obtain permission from the court before filing his surreply, I have considered plaintiff's submission solely out of special solicitude to his *pro se* status. *See* N.D.N.Y. L.R. 7.1(b)(1) ("A surreply is not permitted."); *Youmans v. City of N.Y.*, 14 F. Supp. 3d 357, 360 (S.D.N.Y. 2014) ("Plaintiff's Surreply was neither contemplated by the Court's July 2, 2012 Scheduling Order. . . nor submitted with prior approval pursuant to the Court's individual rules of practice. However, the Court will nonetheless consider Plaintiff's Sur-reply submission. . . in accordance with the special solicitude afforded pro se plaintiffs.").

requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'"

*In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.   <u>First Disciplinary Hearing: Issue Preclusion</u>

In his Article 78 proceeding challenging the first disciplinary determination, plaintiff raised the same arguments now advanced in support of his section 1983 procedural due process claims asserted against all defendants. Specifically, he alleged that defendant Gardner denied him the right to call a particular witness and present documentary

evidence in his defense of the charge set forth in the misbehavior report.

Dkt. No. 38-10. Likewise, the amended complaint alleges that defendant Gardner "denied all plaintiff's requests for documentary evidence . . . and plaintiff's request for witnesses[.]" Dkt. No. 20 at 4. Because the Article 78 court concluded that plaintiff was entitled to call the requested witness and, under certain circumstances, access to the requested documentary evidence, the court remitted the matter to the DOCCS for a new hearing. Dkt. No. 38-10 at 3, 5. Importantly, however, the Article 78 court concluded, both explicitly and implicitly, that plaintiff's constitutional rights were not violated. The court expressly stated that, " [b]ecause. . . [defendant Gardner] provided a good faith reason for denial of the witness. . . ., there was no constitutional violation[.]" *Id.* at 3. With respect to defendant Gardner's denial of plaintiff's request to present certain documentary evidence, while the Article 78 court did not expressly find that plaintiff's constitutional rights were not violated, the court implied as much by remitting the matter instead of requiring that the determination be expunged. *See Jamison v. Fischer*, 78 A.D.3d 1466, 1466-67 (3d Dep't 2010) ("While regulatory violations . . . will necessitate remittal for a new hearing, constitutional violations require expungement[.]" (citations omitted)). Defendants argue that the Article 78 determination challenging

the first disciplinary hearing is entitled to preclusive effect and bars plaintiff from raising any due process claims with regard to the first hearing determination.

Both the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, and the corresponding statute, 28 U.S.C. § 1738, require that a federal court accord a state court judgment the same preclusive effect which it would merit under the law of the state from which it originated. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *accord, Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 517 F. App'x 11, 12 (2d Cir. 2013). "This rule applies to actions brought pursuant to 42 U.S.C. § 1983." *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996). Because the underlying state court determination at issue in this action originated in New York, the law of that state controls in determining what preclusive effect the Article 78 court's determination has in this case. *Giakoumelos*, 88 F.3d at 59; *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply . . . New York law in determining the preclusive effect of a New York State court judgment.").

In New York, issue preclusion, often referred to as collateral estoppel, bars a party that has had a full and fair opportunity to litigate an issue of fact or law from relitigating the same issue once it has been decided against that party. *Proctor v. LeClaire,* 715 F.3d 402, 414 (2d Cir. 2013); *McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir. 2007), *cert denied*, 552 U.S. 1179 (2008). Issue preclusion applies when

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006) (quotation marks omitted); *accord*, *Proctor*, 715 F.3d at 414; *see also McKithen*, 481 F.3d at 105. The burdens applicable to the factors informing the issue of collateral estoppel are variously allocated. The party seeking to invoke issue preclusion bears the burden of demonstrating that the nature of the issues are identical, and "they were necessarily decided in the prior action." *Kulak v. City of N.Y.*, 88 F.3d 63, 72 (2d Cir. 1996). The burden of demonstrating that the prior action did not afford a full and fair opportunity to litigate the issue, however, rests with the party opposing application of the doctrine. *Kulak*, 88 F.3d at 72. The determination of whether the previous action

provided a full and fair opportunity to litigate requires consideration of several factors, including

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation.

*Shell v. Brun*, 362 F.Supp. 2d 398, 400 (W.D.N.Y. 2005) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 500, 501 (1984)).

As noted above, in this instance, the Article 78 court held that "there was no constitutional violation," notwithstanding its conclusion that plaintiff should have been given the opportunity to call a witness to explain the significance of the photographs at issue and adduce documentary evidence including training materials related to gang symbols and signs at the first hearing. Dkt. No. 38-10 at 3, 5. The state court explained that due process was not offended because defendant Gardner provided a good-faith reason for denying plaintiff's request to call an investigator assigned to the DOCCS Inspector General's office as a witness.[3] *Id.*

---

[3]    As was discussed briefly above, the Article 78 court made the express finding of no constitutional violation only with respect to plaintiff's first cause of action, in which he argued he should have been permitted to call a particular witness at the first disciplinary hearing. Dkt. No. 38-10 at 3. Although he did not make a similar express finding with respect to plaintiff's third cause of action, which challenged defendant Gardner's rejection of his request to present documentary evidence, the same

From the record now before the court, it is clear that plaintiff raised the constitutional claims now being asserted in his Article 78 proceeding, and that the precise issue now presented – that is, whether his constitutional rights were violated by the hearing officer's failure to permit him the opportunity to call a witness and to submit evidentiary materials – was decided against him. There is nothing to suggest that plaintiff was not afforded a full and fair opportunity to litigate those  constitutional claims in the Article 78 proceeding, in which he was represented by counsel.[4]

Plaintiff likens his circumstances to those of a case involving another New York prison inmate, Darren Jordan. Dkt. No. 41 at 2. Plaintiff appears to contend that Jordan experienced precisely the same sequence of events as he has alleged in this action, but that Jordan's federal action

---

conclusion is implicit in his decision to remand the matter for a new hearing. *Jamison*, 78 A.D.3d at 1466-67; *see also Santiago v. Fischer*, 76 A.D.3d 1127, 1127 (3d Dep't 2010) ("[B]ecause the Hearing Officer put forth a good faith reason for [denying the petitioner's request to call a witness], petitioner's constitutional rights were not violated; instead, it amounted to a violation of petitioner's regulatory right to call witnesses and, therefore, the proper remedy is to remit the matter for a new hearing[.]" (citations omitted)).

[4]     Plaintiff's notice of appeal to the Third Department from the Article 78 court's finding with respect to the constitutional issue serves as some evidence that plaintiff was provided a full and fair opportunity to present those issues in state court. Dkt. No. 28-1 at 3. The Article 78 court's determination became final, however, when plaintiff failed to perfect his appeal. *See, e.g., Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of N.Y.*, No. 10-CV-05986, 2011 WL 3273273, at *7 (S.D.N.Y. 2011) ("Plaintiff had the opportunity to raise these . . . issues with the Appellate Division but failed to perfect its appeal. This United States District Court does not serve as an alternative forum to review state court decisions when litigants fail to perfect their appeal.").

(also asserting due process violations) was settled. *Id.* at 6. Although it is true that Jordan commenced an action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights arising from a disciplinary proceeding, a review of the docket sheet in that matter reveals that the district court was not asked to address the merits of plaintiff's due process claim. *Jordan v. Prack*, No. 12-CV-0520, Docket Sheet (W.D.N.Y. filed June 5, 2012). More significantly, it appears that, unlike in this instance, the Article 78 court in Jordan's case was also not called upon to address the merits of the Article 78 petition because, prior to a decision in that matter, the hearing officer's determination was administratively reversed and all references to the matter were expunged from his disciplinary record. *Jordan v. Fischer*, 98 A.D.3d 788 (3d Dep't 2012). Accordingly, that case is materially distinguishable from the circumstances now presented.

In sum, because the Article 78 court concluded that plaintiff's constitutional rights were not abridged during the course of the first disciplinary hearing, that determination is entitled to full faith in credit and precludes plaintiff from mounting a challenge in this court regarding the first disciplinary hearing.

C.     Second Disciplinary Hearing: Liberty Interest Deprivation

In his complaint, plaintiff also challenges the second disciplinary hearing determination, again asserting that he was denied procedural due process by the hearing officer, defendant Esgrow. Dkt. No. 20 at 3-4. In their motion, defendants assert that plaintiff has failed to state a claim in this respect because plaintiff was not deprived of an actual liberty interest. Dkt. No. 28-2 at 6-7.

To state a cognizable procedural due process claim under section 1983, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 79-80; *Hynes*,

143 F.3d at 658. The prevailing view in this circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See*, *e.g.*, *LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-0985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.).[5] Accordingly, to find that plaintiff's amended complaint states a cognizable due process claim, I must inquire whether the allegations related to the conditions of plaintiff's SHU confinement rise to the level of an atypical and significant hardship under *Sandin*.

Atypicality in a *Sandin* inquiry is normally a question of law.[6] *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). "[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (citing *Brooks v. DiFasi*, 112 F.3d 46, 48-49

---

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

[6]     In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).

(2d Cir. 1997)). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a court may not need to undergo a detailed analysis of these considerations. *Arce*, 139 F.3d at 336; *Hynes*, 143 F.3d at 658.

According to plaintiff's amended complaint, the second disciplinary hearing did not result in plaintiff serving any additional SHU confinement. Plaintiff explains that, although he was sentenced to six months SHU confinement following the second hearing, it amounted to a sentence of time already served as a result of the time spent in SHU confinement following the first disciplinary hearing. *See* Dkt. No. 20 at 4 ("[Defendant] Esgrow . . . sentenced [plaintiff] to six (6) months SHU, which had already been completed[.]"). In any event, defendant Esgrow's determination following the second disciplinary hearing was reversed and expunged from plaintiff's disciplinary record. *See id.* ("While the Article 78 was pending, [defendant] Prack reversed the hearing disposition and expunged it from Plaintiff's records."). Accordingly, because plaintiff was sentenced to time already served and the determination was expunged, the second hearing did not result in the deprivation of a cognizable liberty interest, and plaintiff's due process claim relating to this hearing is subject to dismissal for failure to state a claim upon which relief may be granted. *See Walker v.*

*Bates*, 23 F.3d 652, 658-59 (2d Cir. 1994) ("The rule is that once prison officials deprive an inmate of his constitutional procedural rights at a disciplinary hearing *and* the prisoner commences to serve a punitive sentence imposed at the conclusion of the hearing, the prison official responsible for the due process violation must respond in damages[.]" (emphasis added)); *Valentine v. Honsinger*, 894 F. Supp. 154, 157 (S.D.N.Y. 1995) ("Even if we construe the facts for plaintiff to assume *arguendo* that he was denied his right to call witnesses. . . at the . . . rehearing, there would be no claim because plaintiff suffered no deprivation of liberty as a result of [the defendant]'s conduct because the sentenced issued by [the defendant] . . . was limited to punishment plaintiff had already served. Indeed, [the defendant] ordered records of the hearing expunged, there was no harm at all as a result of the [rehearing].").

IV.    SUMMARY AND RECOMMENDATION

The remaining claims in this action assert procedural due process deprivations stemming from two disciplinary hearing determinations. The first hearing was reviewed by a state court based on plaintiff's Article 78 petition and resulted in a finding that plaintiff's constitutional rights had not been violated. The Article 78 court's determination in this regard is entitled

to full faith and credit and precludes plaintiff from relitigating that issue in this proceeding. Turning to the second hearing, I find that plaintiff was not deprived any liberty interest as a result of the sanction imposed because the sanction amounted to time already served and plaintiff did not actually serve any disciplinary SHU confinement as a result of the hearing. Plaintiff therefore cannot establish one of the two elements necessary to support a cognizable due process claim with respect to the second hearing. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 28) be GRANTED and that all remaining claims in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      January 29, 2015
               Syracuse, New York



Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Mark LABOUNTY, Plaintiff,
v.
Philip COOMBE, Jr., Wayne Strack, and Donald
Selsky, Defendants.
No. 95 CIV 2617(DLC).

Dec. 26, 2001.

Mark LaBounty, Pro Se, Marcy Correctional Facility,
Marcy, for Plaintiff.

Michael J. Keane, Assistant Attorney General, Office of
the Attorney General of the State of New York, New
York, for Defendants.

OPINION AND ORDER

COTE, District J.

*1 On April 17, 1995, Mark LaBounty ("LaBounty"),
who is presently incarcerated at Marcy Correctional
Facility, brought this action *pro se* pursuant to 42 U.S.C.
§ 1983 ("Section 1983"), alleging that the defendants
violated his constitutional rights while he was an inmate at
Fishkill Correctional Facility ("Fishkill"). On November
25, 1996, the Court granted in part the defendants' motion
to dismiss. On February 5, 2001, the Court of Appeals for
the Second Circuit vacated in part the November 25, 1996
decision, and remanded LaBounty's procedural due
process claim for further development.[FN1] This claim stems
from LaBounty's wrongful confinement in "SHU" for 30
days, a claim that this Court had dismissed for failure to
identify a violation of a liberty interest. After discovery,
defendants now move for summary judgment. For the
reasons set forth below, the motion is denied.

> FN1. The claims brought by the plaintiff that
> survived summary judgment were tried before a
> jury on October 4, 1998. On October 6, 1998,
> the jury returned a verdict for LaBounty on his
> claim that Nurse Millie Rivera had been

deliberately indifferent to his serious medical
needs and awarded him $1 in nominal damages.
The Second Circuit denied the appeals from the
trial and the summary judgment opinion, but
reversed the dismissal of the due process claim at
issue here. *LaBounty v. Kinkhabwala,* No.
99-0329, 2001 WL 99819 (2d Cir. Feb. 5, 2001).

BACKGROUND

LaBounty's allegations against the defendants are
fully described in the Court's November 25, 1996 Opinion,
familiarity with which is presumed. *LaBounty v.
Coombe, et al.,* No. 95 Civ. 2616, 1996 WL 684168
(S.D.N.Y. Nov. 25, 1996). Here, the Court only describes
those facts necessary for the purposes of this motion.[FN2]

> FN2. To the extent that the plaintiff reiterates in
> his opposition claims that have been previously
> dismissed or makes new claims unrelated to the
> issues which have been remanded, those claims
> are not properly before this Court and the Court
> does not consider them here.

By Order dated February 13, 2001, the Court
described the issues remanded by the Court of Appeals for
further development as follows:

1. The plaintiff's procedural due process claim that the
disciplinary hearing held on January 23 and 27, 1995
was delayed, that witnesses at that hearing were
examined outside his presence, and that Vuturo
prejudged the merits of the hearing.

2. Whether plaintiff's due process rights were violated
while he was in SHU during the period beginning on
January 27, 1995, by

(a) a denial of medication for his ear infection;

(b) the prescription of Flexeril for a back condition;

(c) Nurse Rivera substituting his back pain medication
with an unknown drug which caused him dizziness and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

head and stomach aches;

(d) a denial of paper and pencils;

(e) a denial of out-of-cell exercise;

(f) a denial of access to library books;

(g) not being permitted to mail letters in the evening; and

(h) the censorship or destruction of his mail, legal documents, and personal papers.

3. Whether, under *Sandin v. Conner,* 515 U.S. 472 (1995) and its progeny, the plaintiff has a liberty interest sufficient to bring the due process claims described in items 1 and 2.

The parties were ordered to inform the Court if they had any other understanding of the Court of Appeals' Order of remand.

By letter dated February 27, 2001, the defendants agreed that the February 13, 2001 Order correctly described the remanded issues. By letter dated February 17, 2001, the plaintiff also agreed with the description of the issues, but indicated a wish to add three additional issues. By Order dated February 28, 2001, the Court found that the issues remanded for further development were those described in the February 13, 2001 Order.

**\*2** The following facts are undisputed or as shown by the plaintiff unless otherwise noted. On January 12, 1995, LaBounty went to the clinic at Fishkill to renew his prescriptions for hypertension medication, and to complain of an ear infection. On that day, Nurse Ronald Waller issued an "Inmate Misbehavior Report" against him, which included the charge of refusing a direct order. Also on that day, Robert L. Macomber issued a "Inmate Misbehavior Report" against LaBounty, which included the charge of possessing outdated medications in his cell.

*Tier III Hearing*

On January 23 and 27, 1995, hearing officer Joseph

Vuturo ("Vuturo") conducted a "Tier III" disciplinary hearing to address the charges against plaintiff. [FN3] On January 27, Vuturo found LaBounty guilty of violating a direct order and possessing outdated medications. Vuturo sentenced LaBounty to 90 days of segregated confinement in the Special Housing Unit ("SHU"), of which 60 days were suspended. LaBounty served 30 days in SHU, beginning on January 27, 1995.

> [FN3.] Tier III hearings are held for " 'the most serious violations of institutional rules." ' *Colon v. Howard,* 215 F.2d 227, 230 n. 1 (2d Cir.2000) (citation omitted).

On January 27, 1995, LaBounty appealed his conviction to the Commissioner of the Department of Correctional Services ("DOCS"). On March 22, 1995, the DOCS Director of the Special Housing / Inmate Disciplinary Program, defendant Donald Selsky ("Selsky"), reversed LaBounty's conviction on the charge of possessing outdated medication because the "[m]isbehavior report fail[ed] to support [the] charge." On February 6, 1996, Selsky "administratively reversed" plaintiff's conviction on the only remaining charge-disobeying a direct order-"due to off-the-record communication used as evidence in hearing." Selsky directed that any records containing references to the January 27, 1995 hearing be expunged.

*SHU Conditions*

The SHU regulations provide that, while in SHU, inmates are confined to their cells for 23 hours a day, and are permitted to leave their cells for recreation, visits to the medical department, legal visits, guidance or counselor interviews, and for showers two times per week. SHU may be imposed for disciplinary and non-disciplinary, or administrative, reasons. Between January 1, 1991 and December 31, 1996, 162,601 of the 215,701 inmates in the New York correction system received "confinement sanctions." 106,265 inmates were penalized by "keeplock" confinement. In 1993, 4.2% of the inmates in DOCS' confinement were sentenced to SHU, and in 1994, 4.8% were sentenced to SHU.

*Plaintiff's Experience in SHU*

While in SHU, LaBounty was deprived of all of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

pain medication which had been prescribed for "constant severe pain related to his spinal condition," [FN4] as well as medication for an ear infection. LaBounty complained to defendant Nurse Rivera and to other medical staff that he was not receiving his pain medication and that he was suffering from an ear infection, but he received no response from them. On February 13, 1995, LaBounty was prescribed "Flexeril" by a physician's assistant, but LaBounty claims the medicine was merely prescribed as a "pretext" and that it did not help his severe pain or his ear infection. LaBounty was in "constant severe pain for the duration of his 30-days in SHU." LaBounty was not treated for his ear infection until he was released from SHU and given a CAT Scan. The CAT Scan revealed that the ear infection had become "Mastoiditis." As a result of the untreated ear infection, LaBounty lost the hearing in his right ear.

> FN4. Plaintiff asserts that his spinal condition was, at all relevant times, well-documented and diagnosed.

**\*3** While he was in SHU, LaBounty was prescribed one refill of his hypertension medication. A nurse gave the refill to officers, but the officers refused to give plaintiff his medication. After LaBounty repeatedly threw his bed against the cell door, the SHU evening supervisor came to his cell and later ordered the SHU officer to give LaBounty his medication.

While he was in SHU, LaBounty was deprived of any "out-of-the-cell exercise," which he requested each day. He was given only two showers during his 30 days in SHU, and each shower was only one to two minutes long. He requested a pen from the SHU officer in order to write his appeal to the Commissioner, and the officer refused. Plaintiff later received a pen from the "porter." [FN5] Plaintiff requested other writing materials from the officers, but they did not give him any. LaBounty received all of his writing materials from the porter and other inmates when they were let out for exercise. Before he was released from SHU, the officers opened LaBounty's "property bags" and "removed legal material relevant to this case and other pending cases." LaBounty was refused books and newspapers while he was in SHU despite requesting them.

> FN5. A porter is an inmate who is also serving a sentence in SHU.

DISCUSSION

Summary judgment may not be granted unless the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The substantive law governing the case will identify those issues that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1987). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the nonmoving party. See Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir.1994). When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P. See also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995). In deciding whether to grant summary judgment, this Court must, therefore, determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the facts in dispute are material based on the substantive law at issue.

Where, as here, a party is proceeding *pro se,* this Court has an obligation to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994). Nonetheless, a *pro se* party's "bald assertion," completely unsupported by evidence, is insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991).

A. *Protected Liberty Interest*

**\*4** A claim for procedural due process violations requires a determination of "(1) whether the plaintiff had a protected liberty interest in not being confined and, if so,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

(2) whether the deprivation of that liberty interest occurred without due process of law." *Tellier v. Fields,*-F.3d-, 2001 WL 457767, at \*7 (2d Cir. Nov. 1, 2000) (errata filed Apr. 26, 2001) (citation omitted). After the Supreme Court's decision in *Sandin v. Connor,* 515 U.S. 472 (1995), a determination that there is a liberty interest also requires a two-part analysis. *Tellier,*-F.3d-, 2001 WL 457767, at \*7. " 'As a result of *Sandin,* a prisoner has a liberty interest only if the deprivation is atypical and significant and the state has created the liberty interest by statute or regulation." ' *Id.* (citation omitted).

*Atypical and Significant Hardship*

The defendants argue that LaBounty does not have a protected liberty interest because his confinement in SHU was not atypical or significant. To determine whether the conditions of a particular confinement impose an "atypical and significant hardship" one must undertake a factual analysis. *Id.* "The circumstances that the court must examine include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions....' " *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000) (citation omitted). It is clear that "[c]onfinement in SHU may impose hardships that are atypical or significantly different from the burdens of ordinary prison confinement." *Id.* " 'The content of the *Sandin* standard of 'atypical and significant hardship' is an issue of law, but if the facts concerning the conditions or the duration of confinement are reasonably in dispute, the jury (where one is claimed) must resolve those disputes and then apply the law of atypicality, as instructed by the Court.' " *Colon v. Howard,* 215 F.3d 227, 230 (2d Cir.2000) (citation omitted).

Material issues of fact exist as to whether LaBounty's confinement in SHU was "atypical" as compared to the conditions of other inmates in both administrative confinement and in the general population. As noted above, LaBounty asserts that while he was in SHU, he was denied medication and medical treatment, writing materials, books, and exercise.[FN6] If proven true, these conditions would appear to be atypical when compared to the conditions of confinement not only of inmates in administrative confinement and in the general population, but also of other inmates in punitive segregation. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 304.1 *et seq.; Colon,* 215 F.3d at 230 (stating that "normal conditions of SHU confinement in New York" include one hour of exercise per day, two showers a week, and a limited number of books). LaBounty further asserts that the conditions in SHU caused him significant hardship in a number of ways, including severe physical pain and the loss of hearing.

> FN6. Although not included in the list of issues from the February 13, 2001 Order, LaBounty also presents evidence that he was allowed only two showers in one month.

**\*5** The defendants rely on the length of LaBounty's sentence of confinement for their argument that his punishment was not atypical and significant. While it has been found in at least one other case that as much as 101 days in SHU did not run afoul of *Sandin,* *Sims,* 230 F.3d at 23, there is no litmus test based on the length of confinement alone-as the remand here demonstrates. *See also Colon,* 215 F.3d at 232 n. 5. Even a relatively brief term in segregated confinement may violate the law. *Taylor v. Rodriguez,* 238 F.3d 188, 196 (2d Cir.2001).

The defendants have also submitted evidence regarding the percentage of inmates in disciplinary confinement. These statistics do not address the specific conditions experienced by LaBounty during his confinement in SHU. *See Welch v. Bartlett,* 196 F.3d 389, 393-94 (2d Cir.1999) (vacating summary judgment where plaintiff alleged that SHU hygiene conditions were far inferior to those in general population). "[M]erely calculating the percentage of prisoners sentenced to SHU confinement" says nothing about the qualitative experience of prisoners in confinement and the relative degree to which they are deprived of the care and facilities at issue here. *Kalwasinski v. Morse,* 201 F.3d 103, 107 (2d Cir.1999).

The defendants make several additional arguments which can swiftly be rejected. They argue that only those deprivations experienced by LaBounty that independently constitute a constitutional violation-such as deliberate indifference to his serious medical needs in violation of the Eighth Amendment or an interference with his ability to pursue litigation in violation of the First Amendment-should be considered in judging whether LaBounty suffered atypical and significant hardships.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

There is no authority within either *Sandin* or its progeny in this Circuit for such a heightened showing. The defendants also argue that the issue of whether LaBounty suffered atypical and significant hardships should be tested not by his personal experience in SHU but by what the prison regulations prescribe as the standard for treatment of SHU prisoners. They contend, for instance, that what is relevant is that SHU prisoners are supposed to receive one hour per day of out of cell exercise and either two or three showers a week (depending on the level of prison) and not that LaBounty contends he received no opportunity to exercise and two brief showers in one month. The individualized inquiry required by the law is of the actual experience of the inmate, not what the experience should have been. *Sims,* 230 F.3d at 22-23. Finally, the defendants contend that they are entitled to summary judgment because while LaBounty's description of his deprivations is sufficient to create issues of fact regarding his own experience, he has not presented evidence that inmates in general population or in administrative confinement were not subjected routinely to those same deprivations. LaBounty has, until this point in the litigation, proceeded *pro se.* He was entitled to rely on the prison's regulations, well established law, and the basic standards of decency, to make the point that the deprivations of medical care, exercise, showers, books, and writing material that he alleges he experienced for one month cannot be the general experience of inmates incarcerated in New York state.

*Liberty Interest Created by State Law*

**\*6** The defendants argue that New York State has not granted inmates a protected liberty interest in remaining free from disciplinary confinement. In *Hewitt v. Helms,* 459 U.S. 460, 471-72 (1983), the Supreme Court held that a state-created "liberty interest arises when state statutes or regulations require, in 'language of an unmistakably mandatory character,' that a prisoner not suffer a particular deprivation absent specified predicates." *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir.1999). *Sandin* did not replace *Hewitt*'s description of the process that creates a cognizable "liberty interest." *Tellier,*-F.3d-, 2001 WL 457767, at *7; *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir.1999); *Welch,* 196 F.3d at 394 n. 4. Where a regulation requires "in language of an unmistakably

mandatory character, that a prisoner not suffer a particular deprivation absent specified predicates," *Tellier,*-F.3d-, 2001 WL 457767, at *8 (citation omitted), then the regulation creates a protectable liberty interest.

New York regulates the process through which SHU disciplinary confinement may be imposed. Regulations allow such confinement only upon "[d]isposition of superintendent's Tier III hearing for a designated period of time as specified by the hearing officer." N.Y. Comp.Codes R. & Regs. tit. 7, § 301.2 (McKinney 1999). The regulations further explain the manner in which the Tier III hearings must be conducted.

Upon receipt of a misbehavior report from the review officer, the hearing officer *shall* commence the superintendent's hearing as follows:

(a) The misbehavior report *shall* be served on the inmate at least 24 hours before the superintendent's hearing. If the inmate is confined and requests an assistant, the hearing *may not* start until 24 hours after the assistant's initial meeting with the inmate.

(b) The inmate *shall* be present at the hearing unless he refuses to attend, or is excluded for reason of institutional safety or correctional goals. The entire hearing *must* be electronically recorded.

(c) The inmate when present may reply orally to the charge and/or evidence and *shall* be allowed to submit relevant documentary evidence or written statements on his behalf.

N.Y. Comp.Codes R. & Regs. tit. 7, § 254.6 (McKinney 2000) (emphasis supplied). The regulations provide that "where the hearing officer affirms the charges on the basis of the evidence, the hearing officer may impose ... confinement to a cell or room continuously or to a special housing unit continuously or on certain days during certain hours for a specified period." *Id.* § 254.7.

It has long been recognized that New York's regulations authorizing restrictive confinement in SHU "provide sufficient limitation on the discretion of prison officials to create a liberty interest." *Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984). *See also Sealey,* 197 F.3d at

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

585 (construing New York regulation regarding administrative confinement in SHU). New York has therefore created a liberty interest protected by the Due Process Clause.

B. *Qualified Immunity*

**\*7** The defendants contend that they are entitled to qualified immunity. Qualified immunity protects a state actor sued in his individual capacity from a suit for damages. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001). A state actor is qualifiedly immune if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Id.* (citation omitted).

LaBounty claims that he was deprived of his procedural due process rights during the 1995 disciplinary hearing because he was denied, among other things, the right to call witnesses and to introduce documentary evidence.[FN7] The law was clearly established in January 1995 that inmates have the right to call witnesses and submit documentary evidence at disciplinary hearings.[FN8] *Wolff v.. McDonnell,* 418 U.S. 539, 566 (1974); *Walker v. Bates,* 23 F.3d 652, 656 (2d Cir.1994). Since the contours of LaBounty's due process rights were well defined by both Supreme Court and Second Circuit precedent by the time Vuturo conducted LaBounty's disciplinary hearing in January 1995, the defendants have not demonstrated that they are entitled to qualified immunity as a matter of summary judgment.

> **FN7.** The parties agreed in February 2001 that the procedural irregularities at issue here were the delay in the hearing, the examination of witnesses outside of LaBounty's presence, and a prejudgment of the merits by a hearing officer. The defendants do not object to LaBounty's emphasis in this motion on the interference with his right to offer evidence.

> **FN8.** The defendants characterize the pertinent inquiry as whether the law was clearly established in January 1995, that inmates have a liberty interest in remaining free from SHU confinement. Defendants argue that the Second

Circuit law since *Sandin* has been "ambiguous at best." The extent to which *Sandin* may have unsettled the law on this issue is irrelevant since *Sandin* was handed down after LaBounty's hearing. The law was "clearly established" as of January 1995, that inmates have a liberty interest in remaining free from segregated confinement such as SHU. *See, e.g., Walker v. Bates,* 23 F.3d 652, 655-56 (2d Cir.1994); *Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984).

C. *Personal Involvement*

Defendants contend that they are not liable for the alleged due process violations because none of the remaining defendants was personally involved in the January 1995 disciplinary hearing. The defendants argue that hearing officer Vuturo is the only proper defendant and that no action may proceed against him because he was never served in this case. As LaBounty will be appointed counsel in this case, counsel for all parties will be able to explore this issue further.[FN9]

> **FN9.** The defendants argue that LaBounty failed to exhaust his administrative remedies by not filing grievances regarding the conditions in SHU. Because the defendants raised this argument for the first time in their reply brief and it has not been developed, it will not be considered. *See Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 142 (2d Cir.1999) (holding that it would not consider arguments raised in a reply brief because "[w]e repeatedly have said that we will not consider contentions first advanced at such a late stage").

D. *Appointment of Counsel*

Plaintiff has submitted an application requesting counsel. In determining whether to grant a request for counsel, the Court must consider
the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)

(Cite as: 2001 WL 1658245 (S.D.N.Y.))

*Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989). As a threshold matter, plaintiff must demonstrate that his claim has substance or a likelihood of success in order for the Court to grant plaintiff's request for counsel. *See Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986). Based on the Court's familiarity with this case and the legal issues presented, LaBounty's claim has substance and LaBounty has shown a need for representation. Accordingly, plaintiff's request for counsel is granted.

### CONCLUSION

For the reasons stated, defendants' motion for summary judgment is denied. Plaintiff's request for counsel is granted. The Pro Se Office of this Court shall seek Pro Bono counsel for this plaintiff.

**\*8** SO ORDERED:

S.D.N.Y.,2001.

LaBounty v. Coombe
Not Reported in F.Supp.2d, 2001 WL 1658245 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ramon ALVAREZ, Plaintiff,
v.
Thomas A. COUGHLIN, III, Commissioner NYS
DOCS; William Brunet, Seargent; SGT. Davis; SGT.
Emery; J. Baker, C.O.; W. Smith, C.O.; M. Hamilton,
C.O.; Mushen, C.O.; Supt. Barkley; Nurse L. Lipscum;
Thomas Farns, C.O.; Walter Lincoln, C.O., Defendants.
No. 94–CV–985(LEK)(DRH).

Feb. 6, 2001.
*MEMORANDUM–DECISION AND ORDER*

KAHN, J.

*1 Presently before the Court are Plaintiff's motions
for relief from judgment and for recusal of the
undersigned. For the reasons set forth below, Plaintiff's
motions are denied.

I. BACKGROUND

Plaintiff, an inmate in the custody of the New York
State Department of Correctional Services ("DOCS"),
commenced the present 42 U.S.C. § 1983 action alleging
violations of his Constitutional Rights on August 5, 1994.
On July 18, 1993, while Plaintiff was incarcerated at
Riverview Correctional Facility, defendant Baker alleges
that she witnessed Plaintiff exposing himself to her in the
recreation yard. Plaintiff was then taken from the yard
to the infirmary by defendants Baker, Smith, and Hamilton.
In his Amended Complaint, Defendant alleges, in relevant
part, that he was repeatedly assaulted by defendants
Davis, Smith, Mushen, and Hamilton while defendants
Liscum, Baker, and Emery stood by and watched in
violation of his Eighth Amendment rights. Plaintiff then
alleges that he was escorted to the prison's special housing
unit ("S.H.U.") and received further physical mistreatment
from defendants Emery, Mushen, Hamilton, Smith, Farns,
and Lincoln.

Plaintiff also alleges that his due process rights under
the Fourteenth Amendment were violated by the
disciplinary proceeding resulting from the incident, which
was conducted by defendant Brunet. Finally, Plaintiff
alleges that defendant Barkley participated in the violation
of these rights by failing to address Plaintiff's grievances
and by designating a biased hearing officer, defendant
Brunet, to preside over Plaintiff's Tier III hearing.

On June 14, 1999, defendants Brunet, Baker and
Barkley ("Defendants") filed a motion for summary
judgment pursuant to Fed.R.Civ.P. 56. Plaintiff filed an
affirmation in opposition to Defendants' motion on June
23, 1999 and a letter response on July 6, 1999. By an
Order dated October 25, 1999, this Court granted
Defendants' motion for summary judgment and dismissed
Plaintiff's case against them in its entirety.[FN1] Plaintiff's
current motions for relief from judgment and recusal were
filed on November 12, 1999 and March 23, 1999,
respectively.

> FN1. Also still pending before the Court is a
> motion for summary judgment filed by Plaintiff
> September 1, 1998. The motion was originally
> dismissed by the Court's Order adopting the
> Report–Recommendation of United States
> Magistrate Judge David R. Homer, which held
> that the motion was untimely and, in the
> alternative, that it failed on the merits. Then, by
> an Order dated June 1, 1999, the Court vacated
> its previous order and held that Plaintiff's motion
> would be addressed on the merits, along with
> Defendants' motion for summary judgment.
> However, Judge Homer's
> Report–Recommendation did address the merits
> of Plaintiff's motion. The Court has undertaken a
> de novo review of the record and has determined
> that Plaintiff's motion should be dismissed for the
> reasons discussed in the
> Report–Recommendation.

II. ANALYSIS

A. Relief from Judgment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

Plaintiff's motion, although termed a "motion for relief from judgment," is brought pursuant to Local Rule 7.1(g). Accordingly, it will be treated by the Court as a motion for reconsideration.

Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g), unless otherwise governed by Fed.R.Civ.P. 60. The "clearly erroneous" standard of review applies to motions for reconsideration. The moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995).

Generally, the prevailing rule in the Northern District "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C–TC 9th Ave. P'ship,* 182 B.R. 1, 3 (N.D.N.Y.1995). Defendant does not argue that there has been an intervening change in controlling law or the availability of new evidence. Therefore, the basis for this motion must be that the Court made a clear error of law or needs to correct a manifest injustice. Although this Court enjoys broad discretion when making a determination to reconsider on this ground, *Von Ritter v. Heald,* 876 F.Supp. 18, 19 (N.D.N.Y.1995), it will not disregard the law of the prior case unless "the Court has a 'clear conviction of error' with respect to a point of law on which its previous decision was predicated." *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981).

1. *Discovery Matters*

**\*2** Plaintiff, in part, objected to Defendants' motion for summary judgment on the ground that Defendants have yet to comply with several orders by this Court compelling production. Ordinarily, Defendants' failure to comply with discovery orders would make a motion for summary judgment premature. However, in this case, the outstanding items sought by Plaintiff do not relate to the claims against the three defendants who have brought the present action.

Plaintiff points to two orders compelling Defendants to comply with his discovery requests. The first, signed on June 26, 1997, orders Defendants to provide Plaintiff with: (1) the names, identification numbers, and cell locations of all inmates that were confined in the Special Housing Unit the evening of the event; (2) copies of any witness refusal forms; (3) copies of Plaintiff's medical records from July 18, 1993 to September 27, 1993; (4) copies of medical refusal forms indicating that Plaintiff refused his medication on the day of the incident; (5) copies of any reports prepared by prison staff regarding Plaintiff's refusal to take his medication between July 18, 1993 and September 27, 1993; and (6) copies of psychiatric reports regarding Plaintiff dated July 18, 1993 to September 27, 1993. The second order, signed on January 29, 1998, requires Defendants to provide Plaintiff with clearer copies of photographs taken of Plaintiff on the day of the incident.

To the extent any of these items exist, they are not relevant to the summary judgment motion before the Court. Accordingly, the Court is free to address the summary judgment motion of these three defendants. However, if Defendants still have not produced the complained of documents and photographs, Plaintiff is free to file another motion to compel or a motion for sanctions.

2. *Defendant Baker*

In their motion for summary judgment, Defendants argue that Plaintiff's claims against defendant Baker are conclusory and insufficient because they do not contain specific allegations of fact indicating a deprivation of rights. *See Barr v. Abrams,* 912 F.2d 52, 56 (2d Cir.1986). Plaintiff's Amended Complaint makes mention of defendant Baker only once. Plaintiff's first cause of action alleges that:

[t]he willful acts and omissions of defendant J. Baker constituted gross deprivation of the plaintiff's Civil Rights when J. Baker subject[ed] or caused plaintiff to be subjected to cruel and unusual punishment and failed to intervene to secure the plaintiff's health and safety.

However, Plaintiff's statement of facts does not allege that defendant Baker was present at the time of the beating

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

or that Baker had any knowledge whatsoever of the beating.

In fact, Plaintiff's statement of facts does not mention defendant Baker at all. The statement of facts does, on the other hand, describe with specificity the involvement of a number of prison staff members, including defendant Liscum who allegedly observed the assault without taking any action to intervene, suggesting that Baker was not present at the time of the beating. Accordingly, Plaintiff's claims against defendant Baker do not contain any specific allegations of fact regarding her alleged failure to intervene and this Court was not in error when it dismissed them.

### 3. *Defendant Barkley*

**\*3** Defendants argue that Plaintiff has not alleged sufficient personal involvement on the part of defendant Barkley. In order to maintain a Section 1983 action, a plaintiff must allege direct personal involvement by the defendant in the alleged constitutional deprivation. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (1994). Liability may not be based on respondeat superior or vicarious liability. *See Al– Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisors may be held liable for personal involvement when they: (1) are directly involved in the alleged events; (2) fail to rectify a constitutional violation after being notified of the situation; (3) create or allow to continue a policy of unconstitutional practices; or (4) commit gross negligence in supervising the individuals responsible for the constitutional violations. *See Wright, 21 F.3d at 501.*

Here, Plaintiff's complaint baldly alleges that defendant Barkley failed to address Plaintiff's grievance complaint and appointed a biased hearing officer to conduct Plaintiff's disciplinary hearing. Plaintiff does not make any specific factual allegations regarding defendant Barkley's involvement in his case. Plaintiff's statement of facts fails to allege facts establishing that Barkley ever reviewed his grievance. Indeed, Plaintiff's own exhibit reveals that Harlan W. Jarvis, Jr., Acting Superintendent, rather than defendant Barkley, reviewed Plaintiff's

grievance. Moreover, an exhibit introduced by Defendants, and not contradicted by Plaintiff, shows that Mr. Jarvis also appointed the hearing officer for Plaintiff's disciplinary hearing.

"It is not enough to allege that officials failed to carry out the duties of their office without defining these duties or how each individual failed to meet them." *Thomas v. Coombe,* No. 95 Civ. 10342, 1998 WL 391143, at *5– *6 (S.D.N.Y. July 13, 1998) (citing *Beaman v. Coombe,* No. 96 Civ. 3622, 1997 WL 538833, at *3 (S.D.N.Y. Aug. 29, 1997), *aff'd in relevant part* No. 97–2683, 1998 WL 382751, at **1 (2d Cir. May 13, 1998)). Because Plaintiff's claim against defendant Barkley fails to allege with sufficient specificity his personal involvement in the alleged constitutional violations, it was properly dismissed by the Court.

### 4. *Defendant Brunet*

Plaintiff alleges that defendant Brunet violated his Due Process rights under the Fourteenth Amendment in the conduct of his disciplinary hearing. Defendants argue that (1) Plaintiff's claim is barred by the Supreme Court decision in *Sandin v. Conner,* 515 U.S. 472 (1995), because Plaintiff has not alleged that he had a protected liberty interest; (2) Plaintiff was nevertheless accorded all of the process due under *Wolff v. McDowell,* 418 U.S. 539 (1974); and (3) defendant Brunet is protected by qualified immunity in any event.[FN2] In order to establish a due process violation, a defendant must "prove that the state has created a protected liberty interest and that the process due was denied." *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)).

> FN2. Defendants also argue in their brief that Plaintiff's claim is barred by the Supreme Court decisions in *Heck v. Humphrey,* 512 U.S. 477 (1994), and *Edwards v. Balisok,* 520 U.S. 641 (1997). Following the filing of Defendants' brief, however, the Second Circuit held that a Section 1983 suit "challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck* and *Edwards." Jenkins v. Haubert,* 179 F.3d 19, 27

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

(2d Cir.1999). Because Plaintiff's complaint challenges the conditions of, as opposed to the fact or duration of his confinement, the *Heck* and *Edwards* decisions are not applicable.

a. *Protected liberty interest*

**\*4** In *Sandin,* the Supreme Court considered whether prisoners have a protected liberty interest entitling them to due process in disciplinary proceedings and held that such interests "will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Sandin,* 515 U.S. at 483–84. Following the *Sandin* decision, the Second Circuit held that, in order for a liberty interest to be protectable, a plaintiff "must establish both that the confinement or restraint creates an 'atypical and significant hardship' under *Sandin,* and that the state has granted inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

i. Atypical and significant hardship

The Second Circuit has repeatedly held that, in determining whether a liberty interest has been affected, a district court is required to undertake extensive fact-finding regarding both the length and conditions of confinement and make specific findings in support of its conclusions. *See, e.g., Brooks v. DiFasi,* 112 F.3d 46, 48–49 (2d Cir.1997); *Miller v. Selsky,* 111 F.3d 7, 9 (2d Cir.1997); *Sealey v. Giltner,* 116 F.3d 47, 51–52 (2d Cir.1997); *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998). The Second Circuit makes clear that it is not enough to look at the length of time a prisoner has been confined to SHU in determining whether he has a liberty interest. *Brooks,* 112 F.3d at 49. Instead, courts must also make a factual finding as to the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population. *Id.* (citing *Miller,* 111 F.3d at 8–9).

However, in *Hynes v. Squillance,* 143 F.3d 653 (2d Cir.1998), the Second Circuit held that, "in cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, the district court need not provide such detailed explanation

of its reasoning." *Id.* at 658. There, the plaintiff offered no evidence in support of his argument that his 21–day confinement was atypical or significant to contradict the defendants' submission showing that the conditions of confinement were typical. *See id.* The ruling was explicitly limited, however, to cases involving shorter periods of segregated confinement. *See id.* The Court held that the decisions in *Miller, Brooks,* and *Wright* all required specific factual findings because they "involved relatively long periods of confinement." *Id.; see also Spaight v. Cichon,* No. 98–2537, 1998 WL 852553, at \*2 (2d Cir. Dec 8, 1998) (holding that a 39–day confinement was not so short as to be subject to dismissal under *Hynes* without further analysis); *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir.2000) (advising district courts to develop a detailed factual record for cases involving segregated confinement of between 101 and 305 days in lenght). The plaintiff in *Miller,* for example, was subject to disciplinary segregation for 125 days. *See Miller,* 11 F.3d at 7.

**\*5** In this case, Plaintiff was subject to 120 days in disciplinary segregation, much closer to the period of confinement in *Miller* than that in *Hynes.* Accordingly, the Court may not rely on the length of Plaintiff's confinement alone and must undertake a detailed factual finding regarding the conditions of Plaintiff's confinement as compared to other forms of segregated confinement and to the general population of inmates.

To establish that Plaintiff's confinement was not atypical and significant, Defendants put forth the affidavit of Mr. Donald Selsky, Director of the Special Housing/Inmate Disciplinary Program. However, Selsky's affidavit discusses the special housing program on a statewide basis in comparison to general population policies statewide, but acknowledges that conditions differ from facility to facility. The affidavit also includes a variety of statistics regarding SHU confinement establish, incluiding the fact that 19,983 of the 215,701 inmates (9.26%) in the prison system between 1991 and 1996 were penalized with SHU confinement and that 17,302 of those received terms up to one year (85.17%). It does not, however, provide any evidence regarding the specific conditions of Plaintiff's confinement.

This leaves the Court with insufficient evidence with

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

which to compare Plaintiff's conditions of confinement to other forms of segregated confinement and to the general population. If such a generalized showing by the government regarding the typicality of segregated confinement was satisfactory, then there would be no need for the specific factual findings required in each case by the Second Circuit.

Indeed, in *Welch v. Bartlett,* 196 F.3d 389 (2d Cir.1994), the Second Circuit held that a district court's reliance on the percentage of the prison population receiving punitive terms of segregated confinement and the percentage of that group receiving terms similar in length to that of the plaintiff was inappropriate. *See id.* at 394. The Court held that

> [t]he theory of *Sandin* is that, notwithstanding a mandatory entitlement, a deprivation is not of sufficient gravity to support a claim of violation of the Due Process Clause if similar deprivations are typically endured by other prisoners, not as a penalty for misbehavior, but simply as the result of ordinary prison administration.

> *Id.*

A comparison between the duration of a plaintiff's SHU confinement and the SHU terms received by other inmates who were convicted of misbehavior "does not tell whether [the plaintiff's] deprivation was more serious than typically endured by prisoners as an ordinary incident of prison life." *Id.* Likewise, the court held that punitive terms in SHU

> are not a 'normal incident' for a prisoner whose wrongdoing must be established according to due process standards if the consequence of an adverse finding is confinement in atypical conditions of severe hardship. How many prisoners receive such terms as punishment for misbehavior does not measure how likely a prisoner is to suffer comparable deprivation in the ordinary administration of the prison.

**\*6** *Id.* Moreover, the Court expressed doubt that, even if such a statistic was held to be relevant, the fact that 10% of prisoner were subject to terms in SHU made such

confinement typical. *See id.* at 394 n.2.

As the record before the Court is not sufficient to determine whether Plaintiff's confinement was an atypical and significant hardship, summary judgment at this time is inappropriate.

#### ii. State created liberty interest

Defendants also argue the second prong of the *Frazier* test, requiring Plaintiff to establish the existence of a state-created liberty interest in remaining free from segregated confinement, has not been satisfied. Defendants contend that no New York law grants prisoners the right to be free from segregated confinement.

Defendants argue that previous Second Circuit precedent establishing the existence of such a state-created interest, *see, e.g., Sher v. Coughlin,* 739 F.2d 77, 81 (2d Cir.1984), does not survive the Supreme Court's decision in *Sandin.* However, *Sandin* does not effect the validity of these decisions. *See Ramirez v. McGinnis,* 75 F.Supp.2d 147, 153 (S.D.N.Y.1999) (holding that *Sandin* "simply limits due process protection to hardships that are also 'atypical and significant' ") (citing *Gonzalez v. Coughlin,* 969 F.Supp. 256, 257 (S.D.N.Y.1997); *Wright v. Miller,* 973 F.Supp. 390, 395 (S.D.N.Y.1997); *Lee v. Coughlin,* 26 F.Supp.2d 615, 632–33 (S.D.N.Y.1998)). Accordingly, New York State regulations do create a protected liberty interest in remaining free from disciplinary segregation.

#### b. *Process Due*

Defendants next urge the Court to find that, even if Plaintiff was entitled to due process protections, he was afforded the necessary procedural protections at his hearing. In a conclusory fashion, Defendants argue that Plaintiff "received advance notice of the charges, called witnesses at the hearing, and testified on his own behalf."

When charged with a disciplinary infraction that could lead to loss of good-time credits or to confinement in SHU, a prisoner is entitled to "at least the minimum requirements of procedural due process appropriate for the circumstances." *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974); *see Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993) (citing *McCann v. Coughlin,* 698 F.2d 112, 121 (2d Cir.1983)). This requires, among things, that the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

prisoner be given advance notice of the charges against him and a meaningful opportunity to marshall and present evidence in his defense, which includes the right to "call witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 563, 566.

Plaintiff specifically argues that defendant Brunet denied him due process by, among other things, disregarding his complaints regarding the confiscation of his trial materials and refusing to allow him to present an eye witness who would testify that Plaintiff was beaten by several of the defendants. The requirement that a prisoner be given advance notice of the charges against him is "no mere formality." *Benitez,* 985 F.2d at 665. Such "notice must be 'written ... in order to inform [the inmate] of the charges and to enable him to marshall the facts and prepare a defense.' " *Id.* (quoting *Wolff,* 418 U.S. at 564). Moreover, the prisoner must be given the notice no less than 24 hours before the hearing and be permitted to retain the notice for at least 24 hours. *See Benitez,* 985 F.2d at 665–66.

**\*7** Here, Plaintiff alleges that his litigation papers were all confiscated from him by the guards in the SHU and that, when he complained of these actions to defendant Brunet, his concerns were ignored. Confiscation of a prisoner's papers made in preparation for a hearing, particularly the notice of charges, significantly hampers the prisoner's ability to prepare his defense. Defendants do not address Plaintiff's allegation in their papers. Accordingly, summary judgment is not appropriate on this ground.

A prisoner is also given the right to call and present witnesses in his defense at a disciplinary hearing. *See Ponte v. Real,* 471 U.S. 491, 495 (1985) (citing *Wolff,* 418 U.S. at 566)). This right is not absolute, however, as prison officials must be allowed "discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority." *Wolff,* 418 U.S. at 566; *see also Ponte,* 471 U.S. at 496 (suggesting that prison officials may also deny a witness request on grounds of irrelevance or lack of necessity). However, "a hearing official has a duty to

articulate an explanation for the decision to exclude a witness." *Rivera v. Coughlin,* No. 92 Civ. 3404, 1994 WL 263417, at \*6 (S.D.N.Y. June 13, 1994).

In this case, Plaintiff alleges that he requested the presence of an eye-witness to the events in question but that defendant Brunet did not allow it. The transcript to the hearing reveals that Brunet informed Plaintiff that he could not contact the witness because he could not contact the witness and the hearing had to be finished that day.

Defendants have not argued, much less established, that these were reasonable limits placed on the hearing by Brunet. Moreover, Defendants have not presented any evidence or argued that allowing the witness' testimony would have been "unduly hazardous to institutional safety" or create a "risk of reprisal or undermine authority." Defendants do not even argue the validity or importance of those reasons set forth by defendant Brunet at the hearing. Finally, it is clear that the proposed evidence in this case was not irrelevant or unnecessary. Accordingly, genuine issues of material fact exist which prevent a finding of summary judgment at this time.

c. *Qualified Immunity*

Finally, relying solely on their prior arguments, Defendants contend that defendant Brunet is protected by qualified immunity. The doctrine of qualified immunity protects a Section 1983 defendant from liability for damages if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Defendants are further protected from liability where the rights are clearly established if it was objectively reasonable to believe that their actions did not violate those rights. *See Anderson v. Creighton,* 483 U.S. 635, 638 (1987).

**\*8** The officials do not have such immunity, however, where the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. In determining whether a particular right was clearly established at the time of the alleged violation, courts should consider:

(1) whether the right in question was defined with

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

"reasonable specificity;" (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991).

In this case, Plaintiff's right to notice and to present witnesses were clearly established and well defined at the time of the hearing, July 22, 1993. Although, prior to 1993, it was not entirely clear whether a prisoner was entitled to keep his notice for at least 24 hours, *Benitez* clarified that this was so on February 3, 1993. Therefore, it was not objectively reasonable for defendant Brunet to leave unanswered Plaintiff's complaint that his litigation papers were confiscated.

Also, the right to present witnesses at a disciplinary hearing and the limitations on that right were well defined prior to the time of the hearing. Whether the rationale offered by defendant Brunet for excluding the witness, the difficulty in locating the witness and the need to complete the hearing that day, are sufficient justification to support his qualified immunity defense are material issues of fact which cannot be resolved on a motion for summary judgment. *See Rivera,* 1994 WL 263417, at *6. Accordingly, summary judgment may not be granted on this ground.

In light of these holdings, it is evident that this Court made a clear error of law and that reconsideration is appropriate as to Plaintiff's claims against defendant Brunet.

B. Recusal

Plaintiff's motion for recusal is based on 28 U.S.C. § 455(a), which states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Id.* Importantly, it does not matter whether the judge is in fact subjectively impartial, only whether the objective facts create the appearance of impartiality. *United States v. Bayless,* 201 F.3d 116, 126 (2d Cir.2000);

*Hughes v. City of Albany,* No. 98–2665, 1999 WL 709290, at **2 (2d Cir. July 1, 1999). "The ultimate inquiry is whether 'a reasonable person, knowing all the facts, would conclude that the trial judge's impartiality could reasonably be questioned." ' *Hughes v. City of Albany,* 33 F.Supp.2d 152, 153 (N.D.N.Y.1999) (quoting *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992)); *see Bayless,* 201 F.3d at 126.

In this case, Plaintiff's claim is based on the congregation of a number of the Court's rulings and the overall handling of his case. The Supreme Court has held, however, that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994); *see Hughes,* 1999 WL 709290, at **2. Indeed, the Second Circuit has held that "opinions formed by a judge on the basis of facts introduced or events occurring in the course of judicial proceedings do not constitute a basis for recusal unless they indicate that the judge has a 'deep-seated favoritism or antagonism that would make fair judgment impossible." ' *United States v. Diaz,* 176 F.3d 52, 112 (2d Cir.1999) (quoting *Liteky,* 510 U.S. at 555). Plaintiff has put forth nothing, and a review of the record reveals nothing, which would suggest to an objective observer that the Court has a deep-seated favoritism for Defendants or any antagonism against Plaintiff. Therefore, his motion is denied.

III. CONCLUSION

**9** ORDERED that Plaintiff's motion to vacate is GRANTED in part and DENIED in part consistent with the terms of this opinion;

ORDERED that Plaintiff's claim against defendant Brunet be REINSTATED and the judgment dismissing the case in defendant Brunet's favor be VACATED;

ORDERED that Plaintiff's motion for recusal is DENIED; and it is further

ORDERED that the clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

N.D.N.Y.,2001.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)

(Cite as: 2001 WL 118598 (N.D.N.Y.))

Alvarez v. Coughlin
Not Reported in F.Supp.2d, 2001 WL 118598 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3273273 (S.D.N.Y.)
**(Cite as: 2011 WL 3273273 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
YESHIVA IMREI CHAIM VIZNITZ OF BORO
PARK, INC., Plaintiff,
v.
The CITY OF NEW YORK, the New York City
Department of Buildings, the New York City Board
of Standards and Appeals, the Fire Department of
New York, Patricia J. Lancaster, in her official ca-
pacity as former DOB Commissioner, Meenakshi
Srinivasa, in her official capacity as BSA Chairper-
son, Robert Limandri, in his official capacity as
DOB Commissioner, and John and Jane Does 1–10,
Defendants.

No. 10 CV 05986(HB).
July 27, 2011.

**OPINION & ORDER**

Hon. HAROLD BAER, JR., District Judge.

**\*1** Yeshiva Imrei Chaim Viznitz of Boro Park,
Inc. ("Plaintiff"), a duly licensed religious corpora-
tion operating a religious school and synagogue, al-
leges that it is being disparately treated by defend-
ants the City of New York, the New York City De-
partment of Buildings (the "DOB"), the New York
City Board of Standards and Appeals (the "BSA"),
the New York City Fire Department, Patricia J.
Lancaster, in her official capacity as former DOB
Commissioner, Meenakshi Srinivasan, in her offi-
cial capacity as BSA Chairperson, and Robert Li-
Mandri, in his official capacity as DOB Commis-
sioner (collectively, "Defendants" or the "City").
Plaintiff brings seven causes of action against De-
fendants alleging violations of the Religious Land
Use and Institutionalized Persons Act ("RLUIPA")
42 U.S.C. § 2000cc(b)(1) and § 2000cc(a), the
United States Constitution, the Constitution of the
State of New York and the Civil Rights Law of the
State of New York. Defendants now move for sum-
mary judgment. For the reasons that follow, De-

fendants' motion is GRANTED.

**I. Factual and Procedural Background**

Plaintiff owns and operates a three-story build-
ing with a cellar at 1854 53rd Street in Brooklyn,
New York.[FN1] The building is located in an R5
residential zoning district, designed to accommod-
ate all types of residential buildings. The building
consists of a yeshiva, which provides religious in-
struction to over 600 students, and a synagogue. A
catering establishment is located in the cellar of the
building, and this same cellar space is used for the
school's cafeteria and assembly hall.

> FN1. Unless otherwise specified, facts in
> this section are taken from findings by the
> court in *Yeshiva Imrei Chaim Viznitz of
> Boro Park, Inc. v. The City of New York, et
> al.,* Index Nos. 5347/07, 18565/07,
> 4841/07 (N.Y.Sup.Ct.2009); Ex. I to Bren-
> nan Decl.

In May 1999, the DOB issued a final certificate
of occupancy ("C of O") to Plaintiff's building. In
addition to providing various authorizations as a
school and synagogue, the C of O authorized the
cellar of the building to be used as a Use Group 9
("UG9") catering establishment. In 2002, the DOB
reexamined Plaintiff's previously approved use and
concluded that the building could not include its ca-
tering establishment in a district zoned residential.
On February 16, 2005 the DOB commenced an ac-
tion before the BSA to revoke the UG9 designation.

On or about September 19, 2005, Plaintiff filed
an application with the BSA for a variance to per-
mit the UG9 catering use that was not permitted in
an R5 zoning district, as well as a request to the
DOB for approval of the catering establishment as a
proper accessory use.[FN2] The DOB denied
Plaintiff's accessory use application and Plaintiff
appealed to the BSA. On January 9, 2007, the BSA
denied both the appeal regarding accessory use, *see*
BSA Resolution of Accessory Use Appeal, Ex. C to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

05/16/2011 Decl. of Ave Maria Brennan, Counsel to Defs., in Supp. of Mot. for Summ. J. ("Brennan Decl."), and the variance application, *see* BSA Resolution of Variance Application, Ex. E to Brennan Decl., and granted the DOB's application to revoke Plaintiff's C of O, *see* BSA Resolution of DOB Application, Ex. G to Brennan Decl.[FN3] The BSA also granted the DOB's motion to continue its application for revocation/modification of the C of O on April 24, 2007. *Id.* at 1. The DOB subsequently amended Plaintiff's C of O by removing the UG9 designation for Plaintiff's catering establishment. *Id.* at 7.

> FN2. New York City Zoning Resolution § 12–10 defines an "accessory use" as (a) a use conducted on the same zoning lot as the principal use to which it is related, except that, where specifically provided in the applicable district regulations or elsewhere in this Resolution, accessory docks, off-street parking or off-street loading need not be located on the same zoning lot; and (b) a use which is clearly incidental to, and customarily found in connection with, such principal use; and (c) is either in the same ownership as such principal use, or is operated and maintained on the same zoning lot substantially for the benefit or convenience of the owners, occupants, employees, customers, or visitors of the principal use. New York, N.Y., Zoning Resolution § 12–10 (2011).

> FN3. The BSA explained that "(1) [the] determination does not render the School or Synagogue illegal in any respect; (2) the cellar may still be used as a cafeteria in conjunction with the school; [and] (3) events that are accessory to the School and/or Synagogue may be held in the cellar pursuant to the approval of [the] DOB and in accordance with this decision." BSA Resolution of Accessory Use Appeal, Ex. C to Brennan Decl. at 11.

**\*2** In 2007, Plaintiff filed an action in the New York State Supreme Court, Kings County, challenging the BSA's determinations (hereinafter "the Article 78 proceeding").[FN4] On May 8, 2009, that court (hereinafter "the Article 78 Court") denied Plaintiff's challenges and held that the "resolutions of the BSA [had] a rational basis, and [were] neither arbitrary nor capricious." *Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. The City of New York, et al.,* Index Nos. 5347/07, 18565/07, 4841/07, at 83 (N.Y.Sup.Ct.2009); Ex. I to Brennan Decl.

> FN4. Plaintiff challenged all three determinations made by the BSA: (1) deciding that the catering establishment operating in the cellar of Plaintiff's premises is not an accessory use; (2) denying Plaintiff's request for a variance to permit the UG9 catering establishment to operate in a residential district; and (3) granting the DOB's application to modify Plaintiff's C of O and to remove the UG9 catering use. *See Yeshiva Imrei Chaim Viznitz,* Index Nos. 5347/07, 18565/07, 4841/07, at 1–2.

Plaintiff filed a notice of appeal on June 22, 2009. *See* Notice of Appeal, Ex. J to Brennan Decl. The New York Supreme Court, Appellate Division dismissed the appeal on February 19, 2010 because Plaintiff failed to perfect its appeal within the time permitted.[FN5] *See Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of New York, et al.,* No.2009–06824 (N.Y.App.Div. Feb. 19, 2010); Dismissal for Failure to Timely Perfect, Ex. K to Brennan Decl.

> FN5. The New York Codes, Rules, and Regulations dictate that an appellant has six months from the date of the notice of appeal to perfect the appeal or proceeding. 22 NYCRR 670.8(e).

Plaintiff filed its complaint before this Court on August 9, 2010, and brings seven causes of action: (1) Defendants are treating Plaintiff on less than

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

equal terms than comparable non-religious institutions in violation of the RLUIPA 42 U.S.C. § 2000cc(b)(1) ("Count I"); (2) Defendants' refusal to recognize Plaintiff's use of the catering establishment as a proper accessory use is a substantial impediment to Plaintiff's religious exercise in violation of RLUIPA 42 U.S.C. § 2000cc(a) ("Count II"); (3) Defendants have intentionally treated Plaintiff differently from other similarly situated nonreligious and religious institutions in violation of the Equal Protection guarantees of the 14th Amendment of the U.S. Constitution ("Count III"); (4) Defendants' "unequal, adverse treatment" of Plaintiff deprives Plaintiff of the right to free exercise of religion guaranteed by the First and Fourteenth Amendments of the U.S. Constitution ("Count IV"); (5) Defendants, under color of law, have violated Plaintiff's constitutional rights under 42 U.S.C. § 1983 ("Count V"); (6) Defendants have violated the Constitution of the State of New York by depriving Plaintiff of the right to free exercise of religion and equal protection ("Count VI"); and (7) Defendants have deprived Plaintiff of its rights secured by the Civil Rights Law of the State of New York § 40–c ("Count VII"). Compl. ¶¶ 50–94.

Defendants moved for a judgment on the pleadings pursuant to Rule 12(c) on the grounds that: (1) the federal claims in the complaint fail to state a claim upon which relief can be granted because they are barred by the doctrines of collateral estoppel and res judicata; (2) the inability to operate a catering establishment does not constitute a substantial burden under RLUIPA; (3) Count V fails to state an independent claim upon which relief can be granted; and (4) this Court should decline to exercise supplemental jurisdiction over the state law claims. See 12/22/2010 Defs.' Reply Mem. in Supp. of Mot. for J. on Pleadings at 1–2.

**\*3** Before the Court resolved the motion for judgment on the pleadings, Defendants moved for summary judgment on the grounds that: (1) the claims raised by Plaintiff are barred by the doctrines of collateral estoppel and res judicata; (2) the

inability of the school and synagogue to operate a catering establishment does not constitute a substantial burden under RLUIPA; (3) Plaintiff has not met its burden to identify other religious non-profit organizations that are similarly situated and had experienced different treatment as required under RLUIPA; (4) Plaintiff's equal protection claim fails to demonstrate that Plaintiff was similarly situated to other religious non-profit organizations that operate catering establishments; (5) Plaintiff's First Amendment rights are not violated by the application of general accessory use regulations; and (6) that this Court should decline to exercise supplemental jurisdiction over the state claims. See 05/16/2011 Defs.' Mem. in Supp. of Mot. for Summ. J. at 2–3. This Opinion addresses the Defendants' motion for summary judgment, which subsumed the motion for judgment on the pleadings.

## II. Discussion

### A. Legal Standard

A motion for summary judgment must be granted if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. A court must resolve all ambiguities and draw all inferences against the moving party. LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir.2005). "If a party fails to properly support an assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed.R.Civ.P. 56(e). Additionally, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3273273 (S.D.N.Y.)
**(Cite as: 2011 WL 3273273 (S.D.N.Y.))**

burden of proof at trial ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**B. Collateral Estoppel**

This Court applies New York law to determine the preclusive effect of a New York State judgment. *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir.2002); *see also Xu v. City of New York,* No. 08–CV–11339, 2010 WL 3060815 (S.D.N.Y. Aug. 3, 2010) (applying New York's preclusion law to determine whether an Article 78 proceeding bars litigation of the remaining claims in federal court). Under New York law, collateral estoppel is a bar when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman,* 502 F.3d 61, 65 (2d Cir.2007) (citations omitted). Collateral estoppel is a "flexible doctrine and whether to apply it [in] a particular case depends on 'general notions of fairness involving a practical inquiry into the realities of the litigation.' " *Id.* at 65–66 (quoting *Jeffreys v. Griffin,* 801 N.E.2d 404, 409 (N.Y.2003)). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991) (citation omitted).

1. *Issues in the Article 78 proceeding and presently before the Court*

**\*4** This Court must first decide to what extent if at all the issues resolved in the Article 78 proceeding are identical to and decisive of the present claims. The Article 78 Court held that the BSA had a rational basis when it determined that the catering establishment was not an accessory use, denied the application for a variance, and granted the DOB's application to remove the UG9 designation from the C of O. *See Yeshiva Imrei Chaim Viznitz,* Index

Nos. 5347/07, 18565/07, 4841/07, at 32, 57, 82. The Article 78 Court also held that the zoning law did not impose a substantial burden on Plaintiff. *Id.* at 53, 66. For the reasons that follow, these holdings are dispositive of the issues in Counts I through IV.

*a. Counts I and III*

Defendants argue that Plaintiff is collaterally estopped from bringing these counts because each is based on the premise that the catering establishment in Plaintiff's cellar is a legal accessory use, which the Article 78 Court decided against Plaintiff. Plaintiff argues that the Article 78 Court merely decided whether to grant or deny Plaintiff's appeal of the DOB's determination that the catering establishment was not operating as an accessory use at the time of that determination, and that such a determination is not decisive here. Notwithstanding Plaintiff's attempts to mischaracterize what the Article 78 Court held, Defendants have met their burden and the issues decided there are determinative here.

Where an issue is raised and decided by an Article 78 Court in its analysis of whether the government had a rational basis for its actions, a subsequent proceeding to decide the identical issue cannot proceed. *Vargas v. City of New York, et al.,* 377 F.3d 200, 207–08 (2d Cir.2004). In *Latino Officers Ass'n v. City of New York,* the district court held that where a plaintiff did not argue in state court that his termination was discriminatory, the state court's "finding that the decision to terminate was supported by substantial evidence—essentially a finding that it was rational—does not lead inexorably to the conclusion that race was not a motivating factor in the NYPD's decision to terminate him." 253 F.Supp.2d 771, 785 (S.D.N.Y.2003). However, where a second plaintiff in the same case contended that his termination was retaliatory and discriminatory, the state court's conclusion that the penalty of dismissal did not shock the conscience "necessarily implied rejection of his claim that his termination was discriminatory and retaliatory.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3273273 (S.D.N.Y.)
**(Cite as: 2011 WL 3273273 (S.D.N.Y.))**

After all, had the termination been discriminatory or retaliatory, the court could not have found it to have been rational." *Id.* at 787.

Here, in reaching its conclusion that the BSA had a rational basis, the Article 78 Court explicitly decided that Plaintiff's catering establishment is not a valid accessory use to the yeshiva and synagogue. This issue is dispositive of the issues in Counts I and III Count I requires that Plaintiff prove that the City has "impose[d] or implement[ed] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1) ( "Equal Terms"). Count III requires that Plaintiff prove that the City denied it equal protection of the laws. U.S. Const. amend. XIV. In both counts, Plaintiff alleges that Defendants have discriminated against it because they freely allow non-religious institutions operating valid accessory uses to engage in the practice of renting out their premises while requiring Plaintiff to obtain prior approval and submit to intrusive inspections before operating its catering establishment. Compl. ¶¶ 49–52, 69. Given that the Article 78 Court held that Plaintiff is not operating a valid accessory use, Plaintiff's argument that it is similarly situated to other institutions operating valid accessory uses lacks merit, and Plaintiff is essentially asking this Court to overturn the Article 78 Court's decision.

**\*5** Plaintiff also argues that since the decision by the Article 78 Court, its catering establishment has been operated as a legal accessory use; unfortunately for Plaintiff it has failed to provide sufficient evidence to raise a triable issue of fact to support its position. Plaintiff offers as evidence only its assertion that it has moved the "chupa" from the sidewalk in front of the catering establishment to the synagogue or above the catering establishment. I find this purported relocation of the "chupa" insufficient to constitute a new legal question as to whether Plaintiff is operating a legal accessory use.

Additionally, Plaintiff argues that the Defendants have engaged in two sets of discriminatory acts

that do not rely on the presumption that Plaintiff is operating a legal accessory use and which have taken place after the Article 78 Court's decision. First, Plaintiff argues that the Defendants have issued several violations, conducted dozens of inspections, and threatened to institute padlock proceedings against Plaintiff but have not conducted similar investigations of other entities allegedly engaged in illegal accessory use catering operations. Plaintiff points out that Virginia Sullivan, the Director of the Borough Enforcement Unit of the DOB, is not aware of any other similar investigations; however, the fact is that Plaintiff has failed to provide any evidence that another entity known to the DOB is operating an illegal accessory use or that Defendants have acted arbitrarily with respect to the enforcement of law.[FN6]

> **FN6.** Plaintiff relies on the institutions addressed by the court in *Third Church of Christ v. City of New York* as evidence of Defendants' discrimination. 617 F.Supp.2d 201 (S.D.N.Y.2008); *see Third Church Submissions,* Ex. J to 05/30/2011 Decl. of Stuart Klein, Counsel to Pl., in Opp'n to Defs.' Mot. for Summ. J. ("Klein Decl."). The *Third Church* court held that the City violated the Equal Terms provision of RLUIPA because two of the institutions, the Beekman and Regency Hotels, were "also in violation of the Zoning Resolution, [but] were given only a 'Notice of Violation[,]' " yet the plaintiff's accessory use designation was revoked entirely. *Third Church of Christ,* 617 F.Supp.2d at 213. Here, to the extent that Plaintiff argues that these hotels are similarly situated because they operate valid accessory uses, Plaintiff's argument must fail because as noted the Article 78 Court held that Plaintiff is not operating a valid accessory use. To the extent that Plaintiff argues that the above mentioned hotels are similarly situated because they operate illegal accessory uses but are being treated differ-

Not Reported in F.Supp.2d, 2011 WL 3273273 (S.D.N.Y.)
**(Cite as: 2011 WL 3273273 (S.D.N.Y.))**

ently by Defendants, Plaintiff fails to provide evidence to raise a triable question of fact. Plaintiff simply asserts that "[since] these establishments are well-known ... it is fair to infer that the [DOB] considers their activities lawful accessory uses, ... [and the BSA] has failed to ask [the] DOB why, if these uses are illegal, these locations are permitted to openly operate, without consequence." *See* 10/17/2006 Letter to BSA, Ex. N to 05/30/2011 Pl.'s Mem. in Opp'n to Mot. for J. on the Pleadings at 1–2. These conclusory statements are insufficient to withstand a motion for summary judgment because they fail to spell out any facts as required under Rule 56(e). *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 898–899 (1990).

Further, Plaintiff argues that Defendants have required it to obtain prior DOB approval for each catered event and that other similarly situated entities have not been subject to this requirement. Plaintiff's argument that Defendants are discriminating against Plaintiff by requiring it to obtain approval to host a catered event because "there is in fact no requirement for an institution to obtain prior approval from [the] DOB or any other City agency in order to operate accessory use catering" is misleading. *See* 05/30/2011 Pl.'s Mem. in Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n Mem.") at 22. Although an entity operating a legal accessory use need not seek prior approval, there has already been a finding that Plaintiff has not been operating a legal accessory use. Plaintiff again asserts, without providing any evidence in support, that this requirement has not been imposed on any other institution. FN7

> FN7. This Court does not interpret Defendants' statement that they are unable to respond to a discovery request without a specific address to mean that other institutions have not been required to obtain approval

to operate a catering event, and again, Plaintiff has failed to produce any evidence to support its assertion.

### b. Count II

Defendants have also met their burden to show that the Article 78 Court decision is decisive of the issue in Count II. Count II requires that Plaintiff prove that the City has "impose[d] or implement[ed] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the [City] demonstrates that imposition of the burden ... is in furtherance of a compelling governmental interest; and ... is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a) ("Substantial Burden"). In issuing its decision, the Article 78 Court discussed at length the Plaintiff's argument that a prohibition on operating its catering establishment would constitute a substantial burden on Plaintiff's religious exercise in violation of RLUIPA 42 U.S.C. § 2000cc(a). *Yeshiva Imrei Chaim Viznitz,* Index Nos. 5347/07, 18565/07, 4841/07, at 53, 66. Whether or not this Court agrees with the Article 78 Court's analysis, it is obliged to recognize that the issue is indeed identical to the issue before this Court.

### c. Count IV

**\*6** Finally, Defendants have met their burden to show that the Article 78 Court decision is decisive of the issue in Count IV. Count IV requires that Plaintiff prove that the City has prohibited the free exercise of religion. U.S. Const. amend. I. Plaintiff alleges that Defendants are posing a substantial burden on religious exercise by denying Plaintiff the ability to generate revenue to support its religious mission and preventing patrons from fulfilling the religious requirement of having a meal at a Jewish marriage ceremony. Compl. ¶¶ 58, 79. As discussed above, the Article 78 Court decided that Defendants' actions do not constitute a substantial burden on Plaintiff. Plaintiff also alleges that Defendants' implementation of the City's land use laws

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

is not neutral and generally applicable to all, but instead discriminates unfairly against the Plaintiff. Compl. ¶ 78. As discussed above, Plaintiff has failed to produce sufficient evidence to show that this Court is presented with a new issue. Therefore, the determinations of the Article 78 Court are decisive of the issues in Count IV.

### 2. *Full and Fair Opportunity to Litigate*

Given that the issues decided by the Article 78 Court are decisive of those in the present action, this Court must next decide whether Plaintiff was afforded a full and fair opportunity to litigate in the Article 78 proceeding. The factors courts consider when determining whether a litigant had a full and fair opportunity to litigate include "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Ryan v. New York Telephone Co.,* 467 N.E.2d 487, 491 (N.Y.1984).

Plaintiff offers three reasons why it was not afforded a full and fair opportunity to litigate the issues decided by the Article 78 Court, none of which are sufficient to meet its burden. First, Plaintiff argues that the Article 78 Court's decision that the BSA had a rational basis to deny Plaintiff's application appealing the DOB's denial of Plaintiff's variance application and that the UG9 catering establishment is not a valid accessory use to the synagogue and school does not necessarily decide whether Defendants have discriminated against Plaintiff in general. However, as explained above, Plaintiff's claims of discrimination arise out of its assertion that it is operating a valid accessory use, which was actually and necessarily decided by the Article 78 Court. Plaintiff has failed to show how the nature of that forum or importance of the claims asserted therein weigh against applying collateral estoppel here, where the Article 78 Court operated within its jurisdiction and the Plaintiff had a strong

incentive to litigate in that proceeding.

Second, Plaintiff argues that in its petition to the Article 78 Court it preserved its right to raise a RLUIPA claim in federal court. *See* Pl.'s Opp'n Mem. at 8. Plaintiff cites no law and I have found none to support its position that stating an intent to raise a claim in a subsequent proceeding in another court deprives a litigant of a full and fair opportunity to adjudicate its claim where the litigant argued the issue and the court decided it on the merits. This Court is loath to create a rule that would allow at the whim of a party litigants to so easily escape the doctrine of collateral estoppel and risk turning federal courts into a forum for appellate review of state decisions.

**\*7** Third, Plaintiff argues it was deprived of a full and fair opportunity to litigate the accessory use issue because of undiscoverable or wrongfully withheld evidence. Plaintiff argues that the Article 78 Court did not consider certain documents produced by the *Third Church* litigation, which took place after the BSA proceedings, and therefore did not comprise the record before the Article 78 Court. However, Plaintiff had access to these documents during the Article 78 proceeding and alleges that Judge Schmidt even questioned the City about these documents. Plaintiff also asserts that on two occasions it had requested from the DOB a list of applications and/or reconsiderations submitted, requested, approved, and/or denied regarding accessory uses over a three year period and that the DOB denied the requests. Plaintiff argues that such information would have revealed proof that Plaintiff had been operating a valid, accessory use. However, the Article 78 Court addressed Defendants' failure to produce the requested documents and decided that Defendants substantially complied with Plaintiff's requests.[FN8]

> FN8. On December 11, 2007, Judge Schmidt ordered the DOB to search for the documents Plaintiff requested, and if no documents were found, to identify how the search was conducted. The DOB respon-

ded with an affirmation which identified how the DOB kept its records, but Plaintiff alleges that the DOB never completed a search for the records. Plaintiff moved for an order of contempt, and while the motion was pending, Judge Schmidt recused himself. The case was transferred to Judge Martin, who ultimately held that "[o]n the basis of the record before it ... [t]he court finds [Defendants] substantially complied with discovery demands.... The court, accordingly, denies petitioner's motion to hold respondents in contempt of the court's orders." *See Yeshiva Imrei Chaim Viznitz,* Index Nos. 5347/07, 18565/07, 4841/07, at 31.

Plaintiff had the opportunity to raise these evidentiary issues with the Appellate Division but failed to perfect its appeal. This United States District Court does not serve as an alternative forum to review state court decisions when litigants fail to perfect their appeal. *See e.g. Schwartzberg v. Califano,* 480 F.Supp. 569, 574 (S.D.N.Y.1979) ("[P]laintiffs cannot ... now argue that they were not afforded procedural due process prior to the terminations. Indeed, this finding became final when plaintiffs failed to perfect their appeal of my prior Opinion and they are hereby estopped from religating that issue."). Given that the Article 78 Court considered these issues, and after review I find that this evidence does not appear to be dispositive, Plaintiff was not denied its full and fair opportunity to litigate.

Moreover, under the *Rooker–Feldman* doctrine, federal district courts lack subject matter jurisdiction over suits that seek to review final determinations by state courts or that seek to resolve issues that are "inextricably intertwined" with earlier state court determinations. *See Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust,* 263 U.S. 413 (1923); *Vargas v. City of New York,* 377 F.3d 200, 205 (2d Cir.2004). Thus, if a suit or claim would be barred in state court by collateral estoppel, the *Rooker–Feldman* doctrine prevents the federal court from asserting subject matter jurisdiction. *Vargas,* 377 F.3d at 205 .

Having decided that all relevant issues in Counts I through IV are barred by collateral estoppel, this Court need not address either the applicability of res judicata or the remainder of the parties' arguments.

**C. Count V: Violation of 42 U.S.C. § 1983**

Section 1983 states that a "person who, under color of [law], subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. In order to bring an action pursuant to § 1983 , a plaintiff must indicate which of its federally protected rights were violated and indicate the remedies it seeks under the statute. *See, e.g., Perez v. Westchester County Department of Corrections,* 587 F.3d 143, 145 (2d Cir.2009). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985)). In Counts III and IV, Plaintiff pleads that it seeks relief under § 1983. Compl. ¶¶ 72, 80. Plaintiff's Count V does not raise any additional Constitutional claims nor seek additional remedies. Therefore, Count V is dismissed as duplicative of Counts III and IV, which are barred by collateral estoppel.

**D. State Law Claims**

**\*8** District Courts may decline to exercise supplemental jurisdiction over a state law claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c) (2006). Having dismissed

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3273273 (S.D.N.Y.)
**(Cite as: 2011 WL 3273273 (S.D.N.Y.))**

all claims over which this Court would have original jurisdiction, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims, Count VI and Count VII.

### III. Conclusion

The Defendants' motion for summary judgment is GRANTED and the Complaint is dismissed. The Clerk of the Court is instructed to close all open motions and remove this case from my docket.

SO ORDERED.

S.D.N.Y.,2011.
Yeshiva Imrei Chaim Viznitz of Boro Park, Inc. v. City of New York
Not Reported in F.Supp.2d, 2011 WL 3273273 (S.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.